W. L. HENRY, individually and as Administrator of R. M. Henry, deceased, v. W. L. HILLIARD, individually and as Executor of James R. Love, deceased.

*Consent Order—Attorney and Client—Res Judicata—Jurisdiction of Judge Commissioned to Hold Court Out of His District—Arbitration and Award.*

1. An order which was, by consent of the attorneys of record for one of the parties, made in a county other than that in which the cause was pending, will not be set aside because one of the attorneys never was and the other was not at the time, though he had previously been, authorized to act for the party, neither of such attorneys not being attorney for the adverse party.

2. Where an order recites that it was made "by consent of all parties," this court is bound by such statement, and a party to the action will not be permitted to contend that his attorney of record was not authorized to consent to the order.

3. While consent will not confer jurisdiction where the court has no jurisdiction of the subject matter, yet where a judge has jurisdiction of the subject matter and a case is transferred to him to be heard in a county other than that in which it is pending, by an order of court, made by consent of all parties, they cannot be afterwards heard to dispute the right of such judge to act in the matter.

4. A judge specially commissioned to hold court in a certain county outside his district has the same jurisdiction of matters transferred to that court, by consent, from another county, as the judge of the district comprising both counties.

5. In an action pending in Haywood Superior Court, which had been committed to arbitrators, a consent order was made authorizing the arbitrators to file their award "under the orders heretofore given in this cause" at Swain Superior Court, as of that term of Haywood Superior Court. The orders referred to provided for judgment on the award and the filing thereof in Haywood county; *Held*, that such provisions by the reference thereto in the order for filing at Swain Superior Court became a part of the latter order.

6. Arbitrators are "a law unto themselves," and it is not necessary that they shall decide or undertake to decide any matters before them according to the rules of law, and their award need not state the facts or reasons on which it is based.

7. An award of arbitrators cannot be set aside for error not appearing on the face of the award and terms of submission.

8. One Superior Court judge cannot reverse or set aside an order or judgment of another; hence, an order refusing a motion to vacate an award cannot, on the same grounds, be renewed before or passed upon by another judge.

CIVIL ACTION, heard before *Bryan, J.*, at Fall Term, 1896, of BUNCOMBE Superior Court, on a motion to set aside a judgment which had been rendered on the award of arbitrators. The motion was allowed, and defendant, Mrs. M. E. Hilliard, appealed.

*Mr. T. H. Cobb*, for Mrs. M. E. Hilliard (appellant).
*Messrs. Merrimon & Merrimon*, for plaintiff.

FURCHES, J.: At Spring Term, 1891, this case was pending in Haywood Superior Court, involving the settlement of the estate of J. R. Love, deceased, in which a large trust fund was involved and in which there were over fifty defendants, related to the testator in different degrees and entitled to different and unascertained amounts. At that term there was a reference by consent of all parties to W. W. Jones and J. K. Boone, as arbitrators, and their award was to be "final and to be enforced as a rule of court." This was signed by Merrimon, J., then presiding and holding said court. Under this judgment and order of reference, said Jones and Boone commenced their work of taking evidence and investigating the matter, but their report was necessarily delayed until spring of 1895.

But the parties interested being anxious for a settlement of the matter at Spring Term, 1894, of Haywood Superior Court (the arbitrators not yet being ready to report), by consent of all the parties, an order was made and signed by Shuford, J., that said arbitrators might file their award during December Term, 1894, of Buncombe Superior Court,

"and the judgment of the court upon such motion shall be entered in the minutes of this court as of this term." But at said December Term of Buncombe court the arbitrators, still not being ready to file their award, Boykin, J., made another order extending the time to Spring Term, 1895, of Madison Superior Court. But no report was made at Madison, and at Spring Term, 1895, of Haywood, which convened on the 8th of April, Graham, J., presiding, made an order, to-wit: "In the above entitled action it is ordered by the court, by consent of all parties, that W. W. Jones and J. K. Boone, arbitrators heretofore appointed in said cause, may file their report and award under orders heretofore taken in this cause, at Spring Term, 1895, of the Superior Court of Swain county, as of this term of Haywood Superior Court." Swain Superior Court was in June, 1895, and the term was held by Starbuck, J., under an exchange with Winston, J., for Swain and Graham counties and under the Governor's commission for those two counties. During said Spring Term, 1895, the arbitrators, Jones and Boone, filed their award, and upon motion of Ferguson & Welch, two attorneys appearing of record for the defendants, Judge Starbuck granted and signed a judgment confirming the award. This judgment was taken to Haywood, together with the award, which became a part of the judgment and was entered of record in the Superior Court of Haywood, as of Spring Term, 1895. There were no exceptions filed or objections made to Judge Starbuck's judgment confirming the award, during that term of court or thereafter, until Spring Term, 1896, of Haywood Superior Court. At that term, as it appears of record, R. D. Gilmer, who was one of the defendants and who some time prior to Starbuck's judgment had been appointed trustee and receiver of the fund, made a motion in behalf of timself and all the defendants, except

120—61

the defendant, Hilliard, to set aside the Starbuck judgment. The notice of this motion shows that it was made principally upon the ground that Judge Starbuck had no jurisdiction of the matter and no right to grant the judgment of confirmation.   And for the further reason that by mistake or some other means there was an error of several thousand dollars in the award.   These allegations were denied by the defendant, Hilliard, and the motion to set aside was heard before Timberlake, J., at Spring Term, 1896, who, after hearing the whole matter upon the record and various orders and upon affidavits of Gilmer and those moving to set aside the judgment and also the affidavits of defendant, Hilliard, and the arbitrators, Jones and Boone, and argument of counsel, refused the motion to set aside the judgment.   And in his judgment refusing the motion to set aside, he ratified and confirmed the Starbuck judgment by requiring the trustee and receiver, Gilmer, in express terms, to proceed to pay out the money in his hands due Jones and Boone under the Starbuck judgment.

The defendant, Gilmer, and those interested with him in making the motion to set aside before Judge Timberlake, took an appeal from his judgment to this court; bond was filed and the case on appeal made out, in which Judge Timberlake found the facts, which are now on file and are made a part of the record of this appeal.   Among many other things which Judge Timberlake found, are these: That said Gilmer, in making this motion, acted for all the defendants, except the Hilliards; that the judgment of Starbuck was made by consent of all the parties, and that said "Gilmer admitted on the argument before him that the Starbuck judgment was made by consent of all the parties."

Although this appeal was perfected, the appellants did not bring it to this court, and the matter rested until

August, 1896, when another notice was served on the defendant, Hilliard, in substance, if not in the exact terms, of the notice returnable to Spring Term, and which was heard by Judge Timberlake. This came on to be heard at Fall Term, 1896, before Judge Bryan, at Haywood Superior Court, but, by agreement, was continued from time to time and from place to place until it was heard at December Term, 1896, of Buncombe Superior Court.

Judge Bryan finds that D. L. Love and his children did not give their consent to the Graham judgment; that R. D. Gilmer, administrator and trustee, did make a motion before Judge Timberlake to set aside the Starbuck judgment, but that none of the parties to this motion were parties to that motion; that W. B. Ferguson, one of the attorneys who made the motion before Starbuck to confirm the report and for judgment, and who is now of counsel for those asking to have it set aside, was not then acting for them, though he had been; and that Mr. Welch was a young attorney and was not authorized to act for these parties. But it is not denied that both Ferguson and Welch were marked as attorneys of record for the *defendants*. It seems that one of them has placed himself in a condition that calls for an explanation, and the other is repudiated. The movers in this matter seem to think that these facts are of benefit to them. But we cannot see that they are. Neither of them ever was counsel for the Hilliards, and their action does not fall under *Gooch* v. *Peebles*, 105 N. C., 411, and *Arrington* v. *Arrington*, 116 N. C., 170.

It is seen that Judge Starbuck was commissioned to hold Swain and Graham courts in January, 1895, and that Haywood court was in April, 1895, and Swain court was in June, 1895. So, as a matter of fact and legal inference, it was known when the order was made at April Term that

Judge Starbuck would hold Swain court. It cannot be disputed, as a legal conclusion, but what this order was made by consent of all the parties to the action, although Judge Bryan finds that D. L. Love and his children did not agree to it. It is not disputed but what all the parties were represented by counsel, and would be bound by any order made during that term of the court in furtherance of the rights of the parties, that the court had the right to make. But we do not think the court had the right to make this order, except by consent of the parties. Neither do we believe the Judge would have made this order except by consent of the parties. With their consent, it was properly made in furthering the interest of the parties and is binding on them.

And it is expressly stated in the order that it is made by *consent of all the parties.* We are bound by this statement as a matter of record. *Woodworking Co.* v. *Southwick,* 119 N. C., 611.

It would be utterly destructive of all our ideas of the verity of records if they could be destroyed by some one coming in after court and saying he did not agree that such an order should be made, although his attorney did.

This brings the case by consent of all the parties to Judge Starbuck at Swain Superior Court. And if he had jurisdiction, that is, the legal right to make the judgment, it would seem that it is regular and should not be set aside on the ground of irregularity. *Godwin* v. *Monds,* 101 N. C., 354; *Bear* v. *Cohen,* 65 N. C., 511; *Gatewood* v. *Leak,* 99 N. C., 363; *Anthony* v. *Estes,* Ibid, 598.

But it is contended by the movers that Judge Starbuck had no authority, even if the Graham judgment was made by consent of all the parties, for the reason that he was not the Judge of the district—that he was only commissioned to hold two courts, Swain and Graham. But we are unable

to see what difference that makes.    He had the same powers while there and holding that court that Judge Winston would have.    *Bear* v. *Cohen*, *supra;* *White* v. *Morris*, 107 N. C., 92; *Benbow* v. *Morris*, 114 N. C., 263    It seems to us that after we have seen that the case had gotten before him by consent of all the parties, he certainly had the right to act upon it.    Indeed, it is seen that as a matter of law the parties knew it would go before him when the order was made at April Term of Haywood court.    It is true that consent will not confer jurisdiction where the court has no jurisdiction of the subject matter.    But that is not the case here.    And where he has jurisdiction of the subject matter and the case is transferred to him by an order of court made by consent of all the parties, they cannot be heard afterwards to dispute his right to act.    It seems to be conceded that, if the consent be established and he had been the Judge assigned to ride the whole district, the judgment would be regular.    We can see no difference on this account, as is shown by the authorities cited above.

But the movers further contend that the consent order of Judge Graham only authorizes the arbitrators to file their award at Swain court.    This would, it seems to us, be a very narrow and strained construction of the order. Why should there have been an order authorizing it to be filed there, if nothing else could be done?    Why should the order have provided that it should then be filed in Haywood Superior Court, as of Spring Term, 1895?    But we are not left alone to this means of construing the Graham order.    It says they may file their award at Spring Term of Swain Superior Court "under orders heretofore taken in this cause."    And Judge Shuford's order made at Fall Term, 1894, in express terms provides for judgment, and that it be afterwards filed in Haywood Court.    The Graham order refers to the Shuford order, and thereby

makes it a part of the Graham order. *Alexander* v. *Norwood*, 118 N. C., 381; Freeman on Judgments, Section 45.

The case was discussed as an agreed judgment—a contract between the parties. This is not true, except so far as it may refer to the consent or agreement to transfer it to Swain court. As we understand a consent judgment, or as it is sometimes called a contract judgment, it is where the parties agree upon the terms of the judgment, that is, as to what shall be put in the judgment. There is nothing of that kind in this case. The award, in fact, constitutes the terms of the judgment, and the judgment of the court is only to enforce the award. In fact, the judgment of the court in such cases—where there has been a submission to arbitrators in a suit pending and the award to be a *rule of court* and an award has been made and no exceptions filed—follows as a matter of course, just as a judgment would follow where there had been a verdict of the jury and no exceptions to the rulings of the court. *Keener* v. *Goodson*, 89 N. C., 273; *Lusk* v. *Clayton*, 70 N. C., 184; *Leach* v. *Harris*, 69 N. C., 537. As there were no exceptions filed, it hardly seems necessary that we should discuss that question.

But it is not necessary that the arbitrators shall decide or undertake to decide any matter before them according to law. It is said "they are a law unto themselves." *Osborne* v. *Calvert*, 83 N. C., 365; *Keener* v. *Goodson*, *supra*. Neither is it necessary that they set out the facts upon which they base their findings, or assign any reason for their findings. It is said it is best they should not do so. *Osborn* v. *Calvert*, *supra*. Neither can an award be set aside where exceptions are made to the award upon the ground of error alone, in the findings, unless they appear upon the face of the award and the terms of the submission. To set aside an award, it must appear there has

been fraud, undue influence or some improper conduct on the part of the arbitrators. No such allegations are made here, or, if they are, nothing of the kind is found by the Judge who set aside the judgment. *King* v. *M 'f'g Co.*, 79 N. C., 360, and cases there cited.

But there is another ground upon which the judgment appealed from must be reversed, and that is, that the movers are estopped. We have a state of things here that cannot be allowed in our judicial procedure—an appeal from one Superior Court Judge to another. We have Judge Timberlake finding that this order of Spring Term, 1895, was made by consent of all the parties, and that the judgment of Starbuck was made by consent of all the parties—that Gilmer, the mover in the matter, admitted that it was made by consent of all the parties; while we have Judge Bryan finding that the Graham order was made without the consent of D. L. Love and children and that the Starbuck judgment was without the consent of anybody, unless it was Mrs. Hilliard. So, we have the state of things so graphically described in *Roulhac* v. *Brown*, 87 N. C., 1. That was a case like this, where an order had been asked of one Judge, and upon failing, it was asked of another Judge, and the court said: "So we have the conflicting rulings of two of the Judges of the Superior Courts in the very same case, in fact, one Judge reverses the decision of the other Judge. How is this unseemly conflict of opinion to be prevented? It can only be done by enforcing the rule *res judicata*." *Roulhac* v. *Brown, supra; Wilson* v. *Lineberger*, 82 N. C., 412; *Jones* v. *Thorne*, 80 N. C., 72.

From the facts found by Judge Timberlake, the movers had no case and they abandoned their appeal. They waited for another Judge to come around and took their chances with him. He reviewed and overruled Judge Timberlake in his findings of fact and law, and set aside the

judgment that Judge Timberlake had refused to set aside but had in effect approved and affirmed. "Such unseemly conflict as this" will not be tolerated by this court. There is error, and the judgment appealed from is reversed.

Reversed.